272

HATTIE W. BACKUS and Another v. FRANK BURKE and Others.[1]

December 19, 1895.

Nos. 9823—(144).

### Foreclosure—Mortgagee in Possession.

When, after a default in a mortgage, the mortgagee in apparent good faith makes a void foreclosure, and, after the year to redeem, the purchaser at the foreclosure sale takes possession under color of the foreclosure proceedings. he is a mortgagee in possession, and entitled to all the rights of such a mortgagee, whether he took possession with or without the consent, either express or implied, of the mortgagor. Rogers v. Benton, 39 Minn. 39, and Jellison v. Halloran, 44 Minn. 199, criticised and limited.

### Same—Statute of Limitations.

The statute of limitations commences to run in favor of such a purchaser from the time he so takes possession; and when by statute the time to commence foreclosure by action was limited to ten years, the time to redeem from such a purchaser occupying the position of mortgagee in possession was by analogy ten years after he so took possession.

### Same—Minors—Disability.

G. S. 1894, § 5147, provides: "If a person entitled to bring an action mentioned in this chapter, except for a penalty or forfeiture, is, at the time the cause of action accrued, * * * within the age of twenty-one years, * * * the time of such disability is not a part of the time limited for the commencement of the action, except that the period within which the action must be brought cannot * * * be so extended, in any case, longer than one year after the disability ceases." *Held*, under this statute, the mortgagor's minor heirs, holding the title to the land when such purchaser took possession, had ten years thereafter to bring an action to redeem; but, if this ten-year period expired prior to one year after any such heir became twenty-one years of age, he (or she) had also until one year after he (or she) became twenty-one years of age in which to bring the action. In this action, *held*, that for ten years, one month, and seven days after the purchaser so took possession his possession was sufficient to start and keep running in his favor the statute of limitations, so as to bar the right of certain of said minor heirs to redeem.

### Same—Extension of Time to Redeem by Laws 1887, c. 69.

Before the time to redeem expired as to one of said minor heirs, the legislature, by Laws 1887, c. 69, amended G. S. 1878, c. 66, § 11, so as to extend

[1] Reported in 65 N. W. 459.

the time in which to foreclose by action to fifteen years. *Held*, this by analogy extended the time to redeem to fifteen years, and such minor heir had at least fifteen years after the purchaser so took possession in which to bring an action to redeem.

### Statute of Limitations—Admission of Service—Ratification.

An admission of service on the summons and complaint in this action was made by defendant's attorneys, and dated on a certain day. This was followed by an answer made by these attorneys, and a trial, in which they appeared and conducted the defense. *Held*, under the circumstances, it must be presumed either that these attorneys had special authority to so admit service, or that the defendant subsequently ratified their acts in so doing, and for the purpose of the statute of limitations the action is deemed to have been commenced from the date at which service so appears to have been admitted.

### Same—Action to Determine Adverse Claims—Effect of Judgment.

This statutory action to determine adverse claims to the mortgaged premises was brought within such fifteen years by the grantees of such purchaser in possession against the grantees of said last named heir. *Held*, if this action results in a judgment establishing the right and title of such heir, it will have stopped the running of the statute of limitations in favor of such purchaser and his grantees in possession from the time of the commencement of this action.

### Finding of Evidence—Conclusiveness.

While such purchaser at the foreclosure sale and his grantees were in possession, the statute of limitations did not run against them so as to bar a foreclosure by action. The trial court found in this action that a certain person (presumably sui juris, but not old in years) "left Duluth, and since the year 1878 his friends * * * have had no information whatever concerning him, and during all of this time he has not been seen or heard of by them." *Held*, this is a finding of mere evidence, not conclusive in itself, and does not amount to a finding that the person is dead.

### Deed as Mortgage—Evidence in Collateral Proceeding.

Where material in a collateral proceeding, a deed absolute on its face may be shown to be in fact a mortgage, without bringing a bill in equity to have it so declared.

### Rulings Reviewed.

Other rulings of the trial court reviewed and disposed of.

Appeal by defendants from an order of the district court for St. Louis county, C. L. Lewis, J., denying a motion for a new trial. Modified.

63 M.—18

*Edson & Hanks, J. W. Bull,* and *Cash, Williams & Chester,* for appellants.

The facts do not show open, notorious, and continuous possession. Washburn v. Cutter, 17 Minn. 335 (361); Bazille v. Murray, 40 Minn. 48, 41 N. W. 238; Lambert v. Stees, 47 Minn. 141, 49 N. W. 662. If possession is taken by the mortgagee otherwise than by foreclosure, it must be by trespass or by virtue of an agreement with the mortgagor subsequent to default. Rogers v. Benton, 39 Minn. 39, 38 N. W. 765; Taylor v. Slingerland, 39 Minn. 470, 40 N. W. 575; Parker v. Hubble, 75 Ind. 580; Newton v. McKay, 30 Mich. 380. There may be cases where the mortgagor is estopped to deny his assent to the entry of the mortgagee, though he has no actual knowledge of the possession. Bausman v. Faue, 45 Minn. 412, 48 N. W. 13; Bausman v. Eads, 46 Minn. 148, 48 N. W. 769; Jellison v. Halloran, 44 Minn. 199, 46 N. W. 332. There is no abandonment of legal title of record except under such circumstances as raise an equitable estoppel. Tiedeman, Real Prop. § 739; 3 Washburn, Real Prop. 453; Stocking v. Hanson, 35 Minn. 207, 28 N. W. 507; Bausman v. Kelley, 38 Minn. 197, 36 N. W. 333; Sanborn v. Eads, 38 Minn. 211, 36 N. W. 338; Welsh v. Cooley, 44 Minn. 446, 46 N. W. 908; Bausman v. Faue, supra. See on the subject of mortgagee in possession Russell v. Akeley Lumber Co., 45 Minn. 376, 48 N. W. 3. To constitute one a "mortgagee in possession," the possession must be taken by the mortgagee during the life of the mortgage under and by virtue of an agreement to that effect on the part of the mortgagor. When possession is thus taken by the mortgagee he cannot be ejected except upon payment of the mortgage debt. If he is thus allowed to enter and to remain in possession, the mortgage not being paid until the right of action to redeem on the part of the mortgagor has expired, he becomes the owner of the property. Russell v. Akeley Lumber Co., supra; Bitzer v. Campbell, 47 Minn. 221, 49 N. W. 691; Knowlton v. Walker, 13 Wis. 264; Waldo v. Rice, 14 Wis. 286; Trimm v. Marsh, 54 N. Y. 599; Howell v. Leavitt, 95 N. Y. 617; Sexton v. Breese, 135 N. Y. 387, 32 N. E. 133; Roberts v. Sutherlin, 4 Ore. 219; Pierce v. Grimley, 77 Mich. 273, 43 N. W. 932. Plaintiffs acquired their title from different sources by different rights and at different times and must, as to each tract, independently of the others, show title and possession.

Tyler, Ejectment, 900; Morris v. McClary, 43 Minn. 346, 46 N. W. 238. The infants respectively had a right to redeem at any time within fifteen years after reasonable time after becoming of age. Demorest v. Wynkoop, 3 Johns. Ch. 129; Howe v. Leavitt, 95 N. Y. 617; Pierce v. Grimley, supra.

*Wm. B. Phelps*, for respondent.

The right of redemption under the Hoffman mortgage was barred in ten years. The right to foreclose and the right to redeem are reciprocal. Holton v. Meighen, 15 Minn. 50 (69); King v. Meighen, 20 Minn. 237 (264); Parsons v. Noggle, 23 Minn. 328; Fisk v. Stewart, 26 Minn. 365, 4 N. W. 611; Rogers v. Benton, 39 Minn. 39, 38 N. W. 765; Miller v. Smith, 44 Minn. 127, 46 N. W. 324, and other cases hereinafter cited. The period limited for foreclosure by action limits the time allowed for redemption. The authorized publication of a notice of foreclosure sale would constitute an admission that the mortgage was not outlawed and the reciprocal right to redeem still existed. Pingrey, Mortg. § 2245; Arrington v. Liscom, 34 Cal. 365; Calkins v. Isbell, 20 N. Y. 147. The time limited for the action to redeem commenced to run from the default in the mortgage. Fisk v. Stewart, supra; Miller v. Smith, supra; Koch v. Briggs, 14 Cal. 256. These reciprocal and commensurable rights terminate at the same time. Holton v. Meighen, supra; King v. Meighen, supra; Parsons v. Noggle, supra; Grattan v. Wiggins, 23 Cal. 16; Cunningham v. Hawkins, 24 Cal. 403; Arrington v. Liscom, supra. Possession by the mortgagee does not affect the right to redeem. Parsons v. Noggle, supra; Cargill v. Thompson, 57 Minn. 534, 59 N. W. 638. Upon expiration of the redemption period the mortgagee in possession becomes the owner of the fee, because his lien on the property ceases to exist and with it the right to redeem. Burwell v. Tullis, 12 Minn. 486 (572); Archambau v. Green, 21 Minn. 520; Slingerland v. Sherer, 46 Minn. 422, 49 N. W. 237; Sichel v. Carrillo, 42 Cal. 493; Sherin v. Brackett, 36 Minn. 152, 30 N. W. 551; Barber v. Evans, 27 Minn. 92, 6 N. W. 445; Ogden v. Ball, 38 Minn. 237, 36 N. W. 344; Rogers v. Benton, supra. Bierman became the owner of the premises in controversy before the commencement of this action. Its commencement did not suspend the running of the time allowed in which to commence an ac-

tion to redeem. Koerper v. St. Paul & N. P. R. Co., 40 Minn. 134, 41 N. W. 656. The amended complaint sets up a different cause of action and the action is founded on a different title. Burke v. Baldwin, 54 Minn. 514, 56 N. W. 173. The amended answer to the amended complaint sets up facts not averred in the original answer. If this amended answer could be construed as a cross-bill asking to be allowed to redeem from the mortgage, this relief would be barred by the running of the limitation period after the service of the first answer, assuming that the period had not elapsed before. Bruns v. Schreiber, 48 Minn. 366, 51 N. W. 120. Nothing occurred to extend the limitation period. An infant may assent to possession by a mortgagee. Wood, Landl. & T. § 97 (101); Goodnow v. Empire Lumber Co., 31 Minn. 468, 18 N. W. 283; Pollock, Cont. 52, 59; Hearle v. Greenbank, 3 Atk. 695; Morgan v. Thorne, 7 M. & W. 400. The quitclaim by the infant when she was 17 years of age did not operate to avoid her consent to the possession of the mortgagee. An infant cannot disaffirm a contract relating to real estate till he arrives at majority. A quitclaim deed after majority will not operate to rescind. Irvine v. Irvine, 5 Minn. 44 (61); Dawson v. Helmes, 30 Minn. 107, 14 N. W. 462; Dixon v. Merritt, 21 Minn. 196; Singer Manfg. Co. v. Lamb, 81 Mo. 221. Bierman and his assigns were mortgagees in possession till the right to redeem was lost.

CANTY, J. This is a statutory action, brought to determine adverse claims to the real estate hereinafter described, and this is the third appeal in the action. See 48 Minn. 260, 51 N. W. 284, and 52 Minn. 109, 53 N. W. 1013.

By reference to the opinions on the two former appeals it will be seen that all parties claim title through Sextus Hoffman, who on June 20, 1872, owned the land, and mortgaged it to one Tischer. There being a default in the mortgage, Tischer attempted to foreclose the same under the power of sale, and one Henry J. Bierman purchased the land at the foreclosure sale on November 23, 1874; but the foreclosure was void, for the reason that a reassignment of the mortgage to Tischer (after he had assigned it to a third party) had not been recorded prior to the foreclosure. There was no redemption from the foreclosure sale, and, after the year of redemp-

tion expired, Bierman, as the court finds, went into possession of the premises. Plaintiffs claim title through Bierman, and they claim that he acquired title by continuing in possession as mortgagee until the statute of limitations had barred the right to redeem from him. Sextus Hoffman, the mortgagor, died intestate August 3, 1873, and defendants claim title as grantees of his heirs. Since the second appeal the pleadings have been amended.

The case was tried by the court below without a jury, and on the findings of fact conclusions of law were made, and judgment was ordered for plaintiffs, adjudging that they are the owners of all the land in question, and forever barring the adverse claims of the defendants thereto. From an order denying a new trial, defendants appeal.

1. This court has held that to give a mortgagee the rights of a mortgagee in possession he must be in possession with the express or implied consent of the mortgagor. Rogers v. Benton, 39 Minn. 39, 38 N. W. 765; Jellison v. Halloran, 44 Minn. 199, 46 N. W. 332. When Bierman took possession of the premises after the year to redeem from the abortive foreclosure sale expired, at least three of the children and heirs of Hoffman, deceased, were minors. The trial court finds that Bierman took possession with the consent and acquiescence of these and the other heir and the widow of Hoffman. No express consent of any of the Hoffmans was proved. It is contended by appellants that, even if the express consent of these minor heirs had been proved, it would amount to nothing as against them, and that surely no implied consent or acquiescence can be imputed to them. We do not deem it necessary to pass upon these questions.

We are of the opinion that when there is a default in the mortgage, and the mortgagee in apparent good faith makes a void foreclosure, and, after the end of the year to redeem, the purchaser at the foreclosure sale takes possession under color of the foreclosure proceedings, he should be treated as a mortgagee in possession, whether he takes possession with or without the consent, either express or implied, of the mortgagor. It is true that, unlike a mortgage at common law, a mortgage under our statute gives the mortgagee neither the title nor right of possession. But the courts were long ago compelled to recognize a marked difference between

the character of our statutory mortgage after default but before .foreclosure, and the character of the same mortgage after an abortive foreclosure and the year to redeem has expired. Thus it has been held that an ordinary conveyance, made by the mortgagee of the mortgaged premises before foreclosure, does not transfer or assign his mortgage lien. Hill v. Edwards, 11 Minn. 5 (22); Everest v. Ferris, 16 Minn. 14 (26). But it is also held that such a conveyance, made by the purchaser at an abortive foreclosure sale, does convey his mortgage lien on the premises so attempted to be conveyed. Johnson v. Sandhoff, 30 Minn. 197, 14 N. W. 889; Holton v. Bowman, 32 Minn. 191, 19 N. W. 734; Jellison v. Halloran, supra.

Every mortgagor understands, when he executes a mortgage, that if he defaults in the conditions to be by him performed an attempt will be made to foreclose the mortgage. If he makes no effort to take advantage of the irregularities .in an abortive foreclosure until after the year to redeem .has expired, and the purchaser at the foreclosure sale has in good faith taken possession, what court will then oust such purchaser without payment of the mortgage indebtedness, even though there was no express consent of the mortgagor to such possession, and the circumstances raise no presumption of an implied consent? In the cases of Pace v. Chadderdon, 4 Minn. 390 (499), Johnson v. Sandhoff, supra, and Holton v. Bowman, supra, the mortgagee's right to such possession was not made to depend on any such express or implied consent of the mortgagor. Surely, the mortgagor cannot, in such a case, obtain possession except through an action to redeem, whether the purchaser has been in possession one day or nine years. But if the purchaser has been in possession only one day, it cannot be held that so short a period of possession is of itself sufficient evidence of the consent of the mortgagor to that possession. Then it cannot be held that the purchaser's right to continue in such possession, taken peaceably and in good faith, after the year has expired, is based on the mortgagor's consent, express or implied, but, on the contrary, it is based on that rule of law which denies to the mortgagor in such a case any remedy but one in equity, which will compel him to do equity; and in the meantime the statute of limitations has been running against him since the purchaser took possession.

But how can the statute of limitations run against the mortgagor if it is by his consent or license that the purchaser is in possession? It is a well-settled principle of law that the statute of limitations does not run in favor of an occupant of land in possession by the license or consent of the owner. 1 Am. & Eng. Enc. Law, 251; 2 Wood, Lim. Act. § 256. This rule is applied to the mortgagee of a common-law mortgage who takes possession by agreement with the mortgagor. 2 Wood, Lim. Act. § 235, and note 2; Marks v. Pell, 1 Johns. Ch. 594, and cases cited. Of course, there are cases where the licensee in possession may, by his acts, repudiate his license, and thereafter hold adversely to the licensor. 1 Am. & Eng. Enc. Law, 251; 2 Wood, Lim. Act. § 256. But if such a purchaser at a foreclosure sale cannot be a mortgagee in possession unless he is in with the consent of the mortgagor, he will cease to be a mortgagee in possession, and becomes a mere trespasser, liable to an action of ejectment, as soon as he repudiates his license, and commences to hold adversely. We cannot hold that such is the law. Such a purchaser, entering under color of the foreclosure proceedings, enters adversely, not by the consent of the mortgagor, and continues to hold adversely from the time he enters. Neither is he liable to an action of ejectment, but the mortgagor is put to an action in equity in which he must do equity.

2. On November 23, 1875, when the time to redeem from this abortive foreclosure expired, the quarter section of land covered by the mortgage was wholly unimproved, and a part of a dense forest. Bierman, who was an unmarried man, immediately built a log shanty on the land, and, as the evidence tends to prove, occupied the same as a residence until September, 1876, when he went on a visit to Pennsylvania, where he remained until about June, 1877, when he returned, and soon afterwards went to work on the Northern Pacific Railroad, where he remained one summer (according to the testimony of some witnesses, and about a year according to the testimony of others). He lived in the shanty, and cut about 30 cords of cord wood on the land in 1878, and about 80 cords in 1879; all of which was hauled away and sold. He cut some more wood in 1880, and lived in the shanty off and on during all of this time until 1881, when he made a contract with one Isham to sell him the northeast 40 acres; and thereupon Isham built a house,

intending to put it on this 40 acres, but by mistake placed it a few rods south of the line of the 40, on the remaining portion of the land of Bierman. Isham lived in this house about a year, and then moved it across the line onto the 40 which he had purchased, and which Bierman had since deeded to him. For two years after Isham built this house Bierman boarded with him, and chopped wood on his own land. Bierman's shanty was not on Isham's 40, but on the remaining part of the quarter section, and was burned down in 1882 or 1883. Shortly prior to that, Bierman took his tools and other property out of the shanty, and kept them at Isham's house. Isham's 40 is not in controversy here, but portions of the other three 40's of this quarter section are.

On June 26, 1883, Bierman conveyed the southeast 40 to one Anderson. (This is the 40 on which the evidence tends to prove that Bierman's burned shanty had been built.) Shortly afterwards Anderson built a house on this 40, and resided upon it until December 3, 1887, when he conveyed it to other parties. On January 31, 1888, this title to this 40 was conveyed to plaintiffs. On November 3, 1885, Bierman conveyed the southwest 40 to Arthur W. and William H. Quirt, who thereupon built a house on it, and resided therein. The Quirts conveyed this 40 September 3, 1886, and on January 18, 1888, the title to the northeast 10 acres of this 40 was conveyed to plaintiffs. On March 17, 1886, Bierman conveyed the east half of the northwest 40, which title or claim of title came to plaintiffs December 16, 1887. On January 14, 1886, Bierman conveyed the west half of the same 40, which title or claim of title came to plaintiffs June 1, 1889. After the death of Sextus Hoffman, neither his widow nor heirs ever paid any taxes on this land, but the taxes have always been paid by those holding the Bierman claim of title.

The statute of limitations began to run in favor of the Bierman claim of title from the time he took possession, November 23, 1875, and, except so far as prevented by the infancy of the Hoffman heirs, would have completed its course in 10 years from that time, if the possession was sufficient for that purpose. See Bradley v. Norris, supra, 156, 65 N. W. 357; Parsons v. Noggle, 23 Minn. 328; Rogers v. Benton, 39 Minn. 39, 38 N. W. 765. We are of the opinion that for at least 10 years after Bierman went into possession, and also until the end of 1885,—a month or more longer,—he and his

grantees were sufficiently in continuous possession to start the statute of limitations running in their favor, and keep it running during the whole of that 10 years. They were actually occupying and using the land in the only manner and for the only purposes for which it was reasonably capable of being used and occupied under the circumstances,—in about the manner that early settlers on heavy timber land usually occupy and use the land on which they settle,—by building a residence upon it, and cutting off the timber preparatory to cultivation. Although there were intervals during which neither Bierman nor his grantees were actually upon the land, yet the circumstances do not disclose an abandonment of it, or intention to abandon it.

3. On August 3, 1873, Sextus Hoffman died intestate, leaving a widow and four children his heirs at law, as follows: Sextus, Jr. (whose age is not found by the trial court); Amelia, then twelve years of age; Heller, ten; and Ida, then three years of age. From the absence of any finding as to the age of Sextus, Jr., we must presume that he was then of full age. The other children were minors.

G. S. 1894, § 5147, provides: "If a person entitled to bring an action mentioned in this chapter, except for a penalty or forfeiture, is, at the time the cause of action accrued, * * * within the age of twenty-one years, * * * the time of such disability is not a part of the time limited for the commencement of the action, except that the period within which the action must be brought cannot * * * be so extended in any case longer than one year after the disability ceases."

Under this section these minors had ten years after Bierman took possession in which to bring an action to redeem; but if this ten-year period expired prior to one year after the minor became twenty-one years of age, he also had until the end of that one year in which to bring his action. The ten-year period in this case expired November 23, 1885. But Amelia was twenty-one years of age in 1882, and Heller in 1884, so that the ten-year period was not extended (or was but slightly extended) as to either of them, and the time to redeem expired as to both of them by the end of 1885. But Ida was not twenty-one years of age until 1891, so that she had one year more, or until 1892, in which to redeem.

4. On March 7, 1887, the legislature by Laws 1887, c. 69, amended G. S. 1878, c. 66, § 11 (see G. S. 1894, § 5141), so as to extend the time in which to commence an action to foreclose a mortgage to fifteen years after the cause of action accrues, the amendment to take effect six months thereafter. As the time to foreclose by action had not then expired as against Ida, that time was extended to fifteen years, instead of ten years, and her right to redeem was by analogy extended to fifteen years after Bierman took possession, or to November 23, 1890. Prior to this time, to wit, on March 26, 1887, she conveyed her interest in the land to these defendants, so that their right to redeem extended at least to November 23, 1890.

5. There is nothing in the return to show whether this action was commenced before or after that date. Counsel for respondents states in his brief that the summons was never served on these appellants at all, but that their attorneys admitted service of the summons and complaint on October 29, 1890, and answered in the action November 29, 1890, six days after the time to redeem expired. This was followed by further proceedings, and a defense on the trial by these appellants. This defense was conducted by these same attorneys. Under the circumstances, it should not, as respondents' counsel contends, be presumed that these attorneys had no authority to admit service of the summons and complaint; but it must be presumed either that they had original authority so to admit service, or that their clients subsequently ratified their acts in so doing. Then, taking respondents' own word for it, it appears that this action was commenced before the 15 years expired in which an action could be brought to redeem Ida's share of this real estate.

6. We are also of the opinion that the commencement of this action to determine adverse claims to this real estate stopped the running of the statute of limitations as to her share.

The original answer is not in the return, so that we cannot tell what it contained. The amended answer to the amended complaint, which was filed a couple of years later, denies that Bierman or his grantees ever were in possession of the property, alleges that defendants are the owners of the property, and prays that the court so adjudge, but it does not ask that they be allowed to redeem from the mortgage. But this statutory action to determine all the ad-

verse claims of the defendants to the property challenges all their rights and claims to the property, and puts all of those rights and claims in litigation. Whether or not the commencement of such litigation which subsequently results in an adjudication establishing the defendants' right would in every case stop the running of the statute of limitations against that right, it is not necessary here to decide. In this case the very existence of defendants' rights was challenged and litigated. It does not seem to us that, while that litigation was in progress, defendants should be put to other remedies to save those rights, when plaintiffs themselves elected this form of action for the very purpose of litigating the existence of those rights. The rights and claims of defendants are not collaterally or incidentally involved in the litigation, but are directly attacked and directly involved. If this action should result in a judgment establishing the existence in the defendants of the share which descended to Ida, the entry of that judgment cannot be defeated by the claim that the statute of limitations has run since the commencement of the action.

7. When Bierman took possession of the mortgaged premises, the statute of limitations ceased to run against his mortgage lien. No authorities have been cited to us on this point, and we have been able to find none directly in point, but are of the opinion that the principle laid down in Bartlett v. Judd, 21 N. Y. 200, and Varick v. Edwards, 11 Paige, Ch. 289, is applicable here. The contention of respondents, which seems to be that, after default in the mortgage, the statute of limitations is always running against the mortgagor and mortgagee both, and that the one in possession at the time the statute has run its course is the owner, is wholly untenable. When Bierman (who stood in the place of the mortgagee) took possession, the statute ceased to run against him, and commenced to run in his favor and against the heirs of the mortgagor and their grantees. But we have seen that as to Ida's share it had not run its course when this action was commenced; therefore defendants are entitled to redeem that share.

The next question is, what is the share of Ida? As the law stood in 1873, when her father died, the widow was entitled as dower to a life estate in an undivided one-third of the property. There were four children. The trial court finds that soon after the death of

his father, "Sextus Hoffman, Jr., left Duluth, and since the year 1878 his friends and relatives have had no information whatever concerning him, and during all of this time he has not been seen or heard of by them." If this was intended as a finding that he is dead, it seems to us that it falls short of being such, and is one of the many instances in which trial courts persist in finding evidence instead of facts. There being no finding that Sextus, Jr., died leaving no wife or issue, we must presume that he is still living, and that no part of his share has descended to his sister Ida. Then her share is an undivided one-fourth, subject to the life estate of the widow in the undivided one-third of the land. This the defendants are entitled to redeem, and this is all the right or interest which the defendants have in the property.

There are some other questions in the case which we will now consider.

8. On September 13, 1876, Henry J. Bierman made a warranty deed to all of this land to his brother, Philip Bierman, who reconveyed it to Henry J. on September 30, 1882. The trial court finds that the conveyance to Philip was in fact a mortgage, executed for the purpose of securing a loan of money made by Philip to Henry J., and the reconveyance was so made on repayment of the loan. The evidence amply sustains this finding. There is nothing in appellants' contention that the oral evidence received to show that this deed was a mortgage is incompetent for that purpose in a collateral proceeding of this character.

9. It is urged by appellants that the testimony of Philip Bierman as to the conversation between him and his deceased brother, received for the purpose of showing that this deed was a mortgage, is incompetent, as the witness was interested in the result of the suit, and Henry J. was then dead. As there is no assignment of error covering this point, we will not consider it.

10. The trial court found that for a period of three years after Anderson conveyed the southeast 40 on December 3, 1887, one Carleton and one Sutherland occupied that 40 as tenants, but does not find whose tenants they were; and in fact the evidence does not disclose whose tenants they were. Appellants assign this finding as error. But we cannot see that the finding is material in this case.

11. Appellants assign as error the refusal of the trial court to make a large number of amendments to its findings, but we have in one way and another already disposed of all the questions raised by these assignments of error.

This disposes of all the questions in the case worthy of consideration.

On the findings of fact the conclusions of law are modified so that it is found as a conclusion of law: That defendants are the owners of the undivided one-fourth of all the real estate described in the complaint herein and therein alleged to be owned by plaintiffs, which undivided one-fourth is the same which descended to Ida Hoffman from her father, Sextus Hoffman, and is subject to the dower right acquired in these lands by her mother, Caroline Hoffman, by reason of her marriage to said Sextus Hoffman, and his death while seised of said land, which dower right consists of a life estate during the life of said Caroline in an undivided one-third of all the real estate described in the mortgage hereinafter mentioned, and which dower right in all the lands so described in said complaint, and therein alleged to be owned by these plaintiffs, is now held and owned by them. Said undivided one-fourth is also subject to the lien of the mortgage made by said Sextus Hoffman and Caroline Hoffman to Mrs. Tischer, as found in the second finding of fact herein. That said mortgage is unpaid, and in full force and effect; and that to the extent that it is a lien upon the said undivided one-fourth this mortgage is owned and held by these plaintiffs, except that the plaintiff Backus is the owner and holder of said mortgage to the extent that it is a lien upon the portion of said undivided one-fourth situated and being in the N. E. ¼ of the S. E. ¼ of the N. E. ¼ of section 17, described in said mortgage. But leave is given to either party to apply to this court or the court below to modify this conclusion of law so as to make it conform to the foregoing opinion, if it appear that by reason of any mistake or oversight it fails to do so. Except as aforesaid, the order appealed from is affirmed.

Order modified.