## OLOF JUNES v. ELMER JUNES.[1]

January 18, 1924.

No. 23,711.

**Adverse possession.**
1. No rights can be acquired by adverse possession in state school land, nor in land occupied under an agreement with the owner.

**Practical location of boundary.**
2. Evidence *held* to sustain the finding that the boundary line in dispute had been established by the practical location thereof by the parties.

[1]Reported in 196 N. W. 806.

Action in the district court for Becker county to establish a boundary line and to recover $500 for destruction of crops and erecting fences on plaintiff's premises. The case was tried before Nye, J., who made findings, designated the true boundary line and ordered judgment for $20 in favor of plaintiff. From an order denying his motion for amended findings and conclusions or for a new trial, defendant appealed. Affirmed.

*Johnston & Carman,* for appellant.

*M. J. Daly,* for respondent.

TAYLOR, C.

This controversy is over the location of a boundary line and the parties are father and son.

The trial court found that plaintiff has been the owner of the southeast quarter of the northwest quarter and the northeast quarter of the southwest quarter of section 36 in township 138 of range 36 for the last 31 years, and that defendant has been the owner of the southwest quarter of the northwest quarter and the northwest quarter of the southwest quarter of the same section for the last 18 years, and further found:

"That the lands of plaintiff and defendant adjoin each other, and that a boundary line between said premises became established between said lands about thirty-one years ago; that a fence was built thereon and along such line so established and during nearly all of said time has been kept and maintained by the respective owners and occupants of said lands, and the true boundary line between plaintiff's and defendant's said lands thereby became fixed and established by a practical location thereof."

Further findings locate this line specifically and definitely.

The question presented is whether the finding that the boundary line has become "fixed and established by a practical location thereof," is sustained by the evidence.

The controversy arose in consequence of a disagreement between surveyors as to the location of the northwest corner of the section. A surveyor named Morton, who seems to have made the earliest

survey, located this corner at the point claimed by plaintiff. to be the original government corner. A surveyor named Aas, who seems to have made the next survey, located this corner at the point claimed by defendant to be the true corner, which point is nearly 600 feet east of the point located by Morton. Two other surveyors claim that something over 20 years ago, but after the surveys of Morton and Aas, they located the original government corner at approximately the same point at which Morton had located the corner, and that Aas had evidently made his survey and located his corner on the theory that the government corner could not be located—that it was a "lost corner." Several other surveyors have located the corner as a "lost corner" at approximately the same point located by Aas. The line established by the court is the line contended for by plaintiff. But the court, instead of finding specifically that this is the true line, established it on the ground of "practical location" by the landowners. This makes it necessary to consider the evidence bearing upon that question.

Section 36 was state school land. Plaintiff purchased his tract from the state and began cultivating it as early as 1891. At that time the adjoining tract on the west, now owned by defendant, was claimed by one Miliama who was cultivating a small portion of it. Plaintiff and Miliama agreed on the boundary line between the two tracts and plaintiff built a fence along this line in 1891. Some 15 years later plaintiff built a new fence. He placed this new fence two or three rods east of the old fence to correct a mistake made in measuring when he built the old fence. The time when the new fence was built is not fixed with certainty. Some of the witnesses place it as early as 1906; others as late as 1909. Whether the old fence remained until the new fence was built is also in dispute. Plaintiff cultivated the land up to the old fence from 1891 until he built the new fence, and has cultivated it up to the new fence ever since. If the land adjoining his had been owned by private parties, he would have acquired title by adverse possession to all the land that he now claims. But Miliama, although occupying the adjoining land for a time, never purchased it, and it remained

state school land until purchased by defendant. Defendant contends, and correctly, that plaintiff could acquire no rights in the adjoining land by adverse possession while it was owned by the state, and that Miliama could make no agreement concerning the boundary line which would be binding on the state or on subsequent purchasers from the state. In 1920 defendant had a surveyor run out the boundary line. This surveyor took the Aas corner as the corner of the section and located his line therefrom. In 1921 defendant built a fence along this line. The tract of nine or ten acres lying west of this fence and east of plaintiff's fence had been a part of plaintiff's cultivated field for more than 30 years, and defendant's act in taking possession of it brought on this lawsuit.

Defendant purchased his land while at work in another part of the state and did not occupy it himself until 1919. At the time he purchased it, defendant made an arrangement with plaintiff by which he furnished the wire for fencing it and plaintiff furnished the posts and built the fence for the privilege of using it as a pasture. Plaintiff used it as a pasture for some years, after which it seems to have been rented to others until defendant moved upon it himself. Defendant contends that the claim of practical location of the line must fail because plaintiff could gain no rights by adverse user while defendant's land belonged to the state, nor while occupying it as a pasture under the arrangement between them. We think the facts do not necessarily lead to the conclusion which defendant would draw therefrom.

Plaintiff has occupied and cultivated the land in controversy under a claim of ownership for more than 30 years. Defendant has had full knowledge of plaintiff's claim from the beginning. It is true that plaintiff could gain no rights by adverse possession as against the state. It is also true that plaintiff will not be permitted to say that his possession of the land which he occupied under an agreement with defendant was adverse to defendant during the time that he so occupied it. But the land here in dispute was not included in the land fenced for defendant by plaintiff and subsequently used as a pasture. Knowing the line which plaintiff

claimed to be the boundary between the two tracts, and that plaintiff had maintained a fence along that line for many years, defendant arranged with plaintiff to inclose his land with a fence. Plaintiff started at one end of his own fence and built a fence around defendant's land to the other end of his own fence. That he performed his agreement fully is not questioned. Defendant knew that plaintiff's fence, built and maintained as a line fence between the two tracts, formed a part of the fence which inclosed his land. He knew that it was made a part of such fence under the claim that it was on the dividing line between his land and plaintiff's. There is evidence that he recognized and acquiesced in the boundary marked by this fence, and that he acquiesced in it for more than 15 years. We think that the evidence justified the finding of the learned trial court. The order denying a new trial is affirmed.