# AGNES NORGONG AND OTHERS v. ELEANOR WHITEHEAD AND OTHERS.[1]

January 30, 1948.

No. 34,528.

[1]Reported in 31 N. W. (2d) 267.

380

*Charles H. Richter,* for appellants.
*David T. Shay,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Action to quiet title to the N½ NE¼ of section 24, township 124, range 32 west, Stearns county, once part of a farm owned by James Flynn, now deceased. The remainder of the farm consisted of the SE¼ of section 13 in the same township and range, directly north of the land in controversy. Upon the death of James Flynn in 1899, the farm passed by devise as follows: To Martin Flynn, his son, the N½ NE¼ of section 24, the subject of this action; and to John Flynn, another son, the SE¼ of section 13, the remainder of the farm, all subject to a life interest in the widow of James Flynn, terminated long prior to this action.

After the death of James Flynn, John Flynn continued to operate the entire farm, including the land in dispute, which had been devised to his brother Martin. The relationship between the brothers was extremely friendly. Martin left the state in the spring of 1906, but visited it on many occasions and at such times made his home on the farm with his brother John. There is no evidence as to the agreement between them on the operation of the land. Martin received no rent for his 80 acres, but John improved the same and annually paid the taxes thereon—an arrangement which met with mutual approval. Throughout their lifetimes, neither John nor any member of his family asserted any right of ownership in Martin's property.

John Flynn died testate November 15, 1940, leaving all his property to his widow, Mary Flynn. Plaintiffs here are such widow and John Flynn's children, who claim title to Martin's 80 acres by adverse possession. Martin died intestate March 23, 1945. He had never married, and his heirs at law comprised one living brother and numerous nephews and nieces, children, and grandchildren of

other deceased brothers and sisters, all of whom, with one exception (Emmett), are the defendants in this action.

John's estate was probated in 1941. Mary Flynn, his widow, was the representative thereof. The final decree of distribution awarded the entire estate to her in accordance with the will. The disputed 80 was not listed as an asset of this estate in the inventory signed by Mary nor in the decree of distribution made therein.

The petition for administration in Martin's estate was heard in Stearns county probate court June 15, 1945. On August 31, 1945, a petition for license to sell his 80 acres at private sale was heard in that court. Mary Flynn appeared and objected to the issuance of the order of license to sell and for the first time claimed title to the land by adverse possession. The probate proceedings were suspended in order to permit commencement of the present action.

At the trial herein, Mary Flynn testified that she married John Flynn in 1905 and lived with him on the farm until his death in 1940; that John and she had farmed the entire 240 acres as one unit until his death; that thereafter she had farmed the land with some of her children until 1944; that her son James had continued to operate the farm as a unit up to the present time; that she had always considered both acreages as one farm, and did not know that anyone claimed differently until shortly after Martin's death; that the 80 was wild land, mostly brush, in 1905, worth $8 to $10 an acre; that since that time her family had grubbed, ditched, fenced, and opened to the plow 65 acres of it at a cost estimated at $800 for grubbing, $175 for fencing, and $150 for ditching, in addition to their labor; that about 1945 she had paid the town of St. Martin $100 so a road would not be placed across the 80; that it was now worth from $35 to $40 an acre; and that she and John had always paid the taxes on the 80.

Mary Flynn further testified that she excluded this property in her inventory of John's estate because it was in Martin's name; that since John's death she has paid the taxes, except for a couple of years she "left out"; that Martin lived with them on the farm the winter of 1905-1906, following which he went to Montana; that every

year or two he would come to their house for a visit, staying with them for periods varying from a week to two months on such occasions; that he never returned to Minnesota to live and never asked any rental of them for the 80; and that his last visit was at the time of John's death, in 1940. She admitted, and it was so stipulated, that on May 11, 1942, she had purchased a certificate of tax sale on the 80, covering the 1940 delinquent taxes, for $61.65.

The court in its findings, conclusions, and order for judgment dated March 3, 1947, determined in substance that for more than 45 years plaintiffs' occupancy of the land was actual, continuous, open, notorious, and exclusive; and that for more than 20 years prior to this action such possession and occupancy were *hostile,* with intent to claim ownership; that defendants or their parents had notice and knowledge of such claim; and hence that plaintiffs are the owners in fee of the 80 and defendants have no right, title, estate, interest, or lien therein.

This appeal is from orders denying the motion of certain of defendants for amended findings or a new trial.

■ Examination of the facts here clearly indicates that one of the essentials for the establishment of title by adverse possession is totally lacking. Adverse possession sufficient to form the basis for title to land must be hostile as to the title of the owner. A claimant under such title must have intended to occupy the land under the exercise of exclusive ownership as against the world. See, 1 Dunnell, Dig. & Supp. § 114, and cases cited.

■ Under this doctrine, we have frequently held that where an occupant's original possession of land was permissive the statute of limitations did not commence to run against the owner until the occupant had subsequently declared or otherwise manifested an adverse holding and notice thereof had been brought to the attention of the owner. Beitz v. Buendiger, 144 Minn. 52, 174 N. W. 440; Cameron v. C. M. & St. P. Ry. Co. 60 Minn. 100, 61 N. W. 814; Backus v. Burke, 63 Minn. 272, 65 N. W. 459; Junes v. Junes, 158 Minn. 53, 196 N. W. 806.

■ We have likewise held that the existence of a close family relationship between the claimant of land and the record owner, such as existed in the instant case, created the inference, if not the presumption, that the original possession by the claimant of the other's land was permissive and not adverse; Lustmann v. Lustmann, 204 Minn. 228, 283 N. W. 387; O'Boyle v. McHugh, 66 Minn. 390, 69 N. W. 37; Collins v. Colleran, 86 Minn. 199, 90 N. W. 364; and that when such original use was thus permissive it would be presumed to continue as permissive, rather than hostile, until the contrary was affirmatively shown. Omodt v. C. M. & St. P. Ry. Co. 106 Minn. 205, 118 N. W. 798.

■ In the instant case, it is clear that the original possession and subsequent use and occupancy by John Flynn was with the permission and consent of his brother Martin, who, throughout his lifetime, maintained a close, friendly, and fraternal relationship with the former. Nowhere is there any evidence to indicate that such original permissive use by John at some point became adverse or hostile, and that such a change was brought to the attention and knowledge of Martin.

Even subsequent to the death of John, for a long period of time there was no assertion of hostility or adverse right by John's devisee, the plaintiff Mary Flynn. On the contrary, her acts in the probate of John's estate and in attempting to acquire tax title to Martin's 80 acres by purchase of tax certificates clearly establish that at no time did she regard either her husband or herself as the owner of the land belonging to Martin Flynn; nor did she express herself to such effect until shortly prior to the commencement of these proceedings.

Under all such circumstances, we must hold that there is no evidence whatsoever to sustain the trial court's finding that the possession, use, and occupancy by John Flynn and his successors was hostile and adverse to the right and title of Martin Flynn so as to establish adverse title in claimants or their predecessors.

Reversed with directions to amend findings of fact, conclusions of law, and order for judgment in accordance herewith.