EDWARD LUSTMANN v. JOHN LUSTMANN AND OTHERS.[1]

January 6, 1939.

No. 31,826.

*W. W. Merrill* and *Smith & Smith,* for appellants.
*John J. Fahey,* for respondent.

[1]Reported in 283 N. W. 387.

STONE, JUSTICE.

Primarily this action is for an injunction to protect his right in what plaintiff claims is an easement by prescription in a private lane or cartway. The action was tried before the Honorable C. M. Tifft, late judge of the eighth judicial district. His decision was for defendants. While plaintiff's motion for amended findings or new trial was pending, came the end of this life for Judge Tifft. That motion was heard and determined by his successor, Judge Moriarty, who so amended the findings of fact and conclusions of law as to reverse Judge Tifft on the merits and ordered judgment for plaintiff, from which defendants appeal.

Plaintiff is the son of August Lustmann, brother of defendant John. (We shall refer to the latter as though he were the only defendant.) Plaintiff owns the east half and defendant the west half of a quarter section. Originally, the whole quarter was the farm of William Lustmann, father of defendant and grandfather of plaintiff. In 1906 William divided the farm between John, defendant, and August, father of plaintiff. William's farm buildings, now defendant's, are not far from the center of the north forty of the west eighty. Shortly after the division between John and August, the latter erected his farm buildings, now plaintiff's, a few rods southeast of the center of the quarter.

The cartway claimed by plaintiff runs from the center of the quarter due north to the highway on the north side of the section. All of it is on defendant's land, the north and south line separating the two farms flanking it on the east.

This cartway, using that designation for convenience, had its origin about 30 years ago, when defendant and his brother August (plaintiff's father) agreed informally that it would be a good thing for both to have a way of convenient travel from the center of the quarter north to the section line. On the evidence, a finding that the intention was to place it on the line between the two eighties would be sustained, but possibly not compelled. In locating the cartway no survey was made, but the two brothers collaborated in measurements intended to place the way on, or close to, the common boundary.

From time to time, the evidence does not show just when or how much, some grading and graveling were done, and one concrete culvert was put in to replace a low wooden bridge. Such ditches as resulted from the grading were shallow. We assume that the evidence shows enough of user to make a case of prescription if the other elements were present. But there is rather conclusive evidence that at times portions of the cartway were permitted to be pretty well monopolized by a rank growth of weeds. Even plaintiff admits that at a time when he was tenant of the whole quarter he plowed a substantial portion of the cartway, asserting, however, that he left it so it could again be used for travel.

The section (of which the two farms in question comprise the northeast quarter) is bounded by modern gravel highways. From his buildings plaintiff has a serviceable farm road leading directly to the highway along the east line. He seems long to have had also the use of a farm road leading northwesterly from his farmstead through that of defendant and on to a church property, situated at the northwest corner of the quarter, and thence to the highway just to the north.

Clearly, if defendant had questioned the power of Judge Moriarty so to amend the findings of his predecessor as to reverse the latter on the merits, we would have to decide whether the successor judge has the power to go so far. There are cases tending, at least, to the conclusion that he lacks the jurisdiction requisite to such a redetermination. School District No. 1 v. Aiton, 175 Minn. 346, 221 N. W. 424. While the motion for amended findings was resisted on the merits, defendant did not question Judge Moriarty's power to consider it. That point has been made for the first time on appeal. Such delay, while not good practice, is not fatal to the objection if there was no jurisdiction. But we do not now decide that point because we have all the jurisdiction needed to put an end to the case.

■ We are in at least as good a position as Judge Moriarty to dispose of the case on the merits. We have not seen nor heard the witnesses. Neither has he. In such a situation, no prejudicial error appearing, if the record shows the findings of Judge Tifft to

have been well supported by law and evidence, they should be reinstated, the judgment reversed, and one directed for defendant. On the record and as matter of law, plaintiff's case for an easement by prescription fails. That is because his user lacked the essential element of being adverse, that is, hostile to defendant as owner of the servient estate.

It is clear from all the evidence that the user by plaintiff and his father, August, had its inception in, and continued by, permission of defendant. The acquisition by prescription of a right of way does not exclude use by the owner of the land or by the public. "But it does require proof of use  *  *  *  as of right and not by favor or permission of the owner," in this case defendant. Schmidt v. Koecher, 196 Minn. 178, 181, 265 N. W. 347, 348.

True, as argued for plaintiff, requisite use for the needed period, if "unexplained,  *  *  *  will be presumed to have been under a claim of right, and adverse." Swan v. Munch, 65 Minn. 500, 504, 67 N. W. 1022, 1024, 35 L. R. A. 743, 60 A. S. R. 491. But both as to origin and use this cartway is well and completely explained by its original location by the two brothers Lustmann. Especially in view of the fact that, contrary to the proved purpose of defendant at least, the road was located entirely on his land, instead of on the common boundary, such use as has been enjoyed by plaintiff and his father plainly was "taken in amity, and in recognition" of defendant's title. Hence, the user "not being adverse in its inception, does not become so until notice or an assertion of an adverse claim." Seymour, Sabin & Co. v. Carli, 31 Minn. 81, 85, 16 N. W. 495, 496. Therefore it is a case of permissive rather than hostile user, under the rule of O'Boyle v. McHugh, 66 Minn. 390, 69 N. W. 37.

Possession or user beginning in permission can become adverse "only upon a notorious assertion of right." Collins v. Colleran, 86 Minn. 199, 204, 205, 90 N. W. 364, 366. When it commences, as plainly it did here, under acknowledgment of defendant's ownership, possession or use will retain "its original quality  *  *  *  and will be presumed to be in subservience to the rightful interest." And "the strictest proof" of hostility of the use is required. Col-

lins v. Colleran, *supra.* Such rulings spell defeat for plaintiff, for absent from his case is the element of hostility to defendant's title.

■ Our conclusion is enforced by the close family relationship, that of brothers, between August and John Lustmann, who originally opened the cartway. In such cases there is at least an inference, if not a presumption, that possession or use of the land of one by the other is permissive and not adverse. O'Boyle v. McHugh and Collins v. Colleran, *supra* (both cases involving parent and child).

Easily distinguishable on its facts is Sorkil v. Strom, 156 Minn. 155, 157, 158, 194 N. W. 333. The record repelled "the idea that the use was a mere permission or license." Somewhat compelling that conclusion was a concession by the plaintiff that the defendant and his predecessor in title had "acquired a prescriptive right of way over that part of the road which is east of the boundary line."

■ In the decision of Judge Tifft there is a clerical error which is in need of correction. In evidence is a surveyor's plat of the two eighties. It showed in black the north and south common boundary. In red, and just west of the north half of that boundary, it indicates, by a mere sketch line, the cartway. Judge Tifft's findings read thus on this point:

"That the red line marked on the plat defendants' exhibit '1' filed herein as located, fixed and determined by surveyor Higgins represents the true boundary line between the lands of plaintiff and of defendants, John and Minnie Lustmann, and is the true and correct boundary line of said tracts."

One of Judge Tifft's conclusions of law was:

"* * * that the defendants have judgment locating and determining the true boundary line between said lands of plaintiff and of defendants, John and Minnie Lustmann, to be as located and found to be by surveyor Higgins as shown by said red line on defendants' exhibit '1' aforesaid."

Applying this decision to the evidence, and particularly to the plat, exhibit "1," the intention is clear. It was to refer not to the

red line, but rather to the black line, as being the common boundary between the north forties of the two eighties. That error is one which could and should have been corrected by motion below. Chase v. Whitten, 62 Minn. 498, 65 N. W. 84.

We have the power and it is our duty to dispose of a case on the merits where so clear a demand for that course is presented. The judgment will be reversed with directions to correct the decision of Judge Tifft in the respect mentioned, to reinstate the whole thereof, and thereon enter judgment for defendants.

So ordered.