Charles PICKAR, Appellant,

v.

William ERICKSON, et al.,
Respondents.

No. C8–85–1562.

Court of Appeals of Minnesota.

Feb. 25, 1986.

Marianne Milloy, Brainerd, for appellant.

Thomas J. Ryan, Brainerd, for respondents.

Considered and decided by HUSPENI, P.J., and FOLEY and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Appellant Charles Pickar brought this action against respondents Peggy and William Erickson seeking an easement by adverse possession across the Ericksons' property. The trial court determined that Pickar is not entitled to an easement. Pickar appeals from the judgment entered against him. We remand.

## FACTS

This action is a dispute about Pickar's right to use a road that crosses the Ericksons' property.

In 1934, three brothers—Clarence, Clifford and Bill Pickar—bought some property in Crow Wing County. Clarence, Charles' father, purchased a forty-acre parcel on a contract for deed. Clifford and Bill bought a forty-acre parcel adjoining Clarence's property to the north. The legal description in Clarence's contract for deed described a right of way on the west side of the parcel that Clifford and Bill bought.

Sometime before 1942, the three brothers, with the help of a neighbor, built a road to access Clarence's property. The road was supposed to lie on the west boundary line of Clifford's and Bill's property, but was built east of the property line in order to avoid a swamp area. Since the road was finished, it has been continuously used to access Clarence's property.

In 1945, Clarence and Edna (formerly Clarence's wife) received a warranty deed to their property. The legal description in this deed does not include the description of the right of way that was in the contract

for deed. In 1964, almost twenty years later and after Clarence had died, Edna sold the property to her son Charles. The legal description in Charles' warranty deed does not include a right of way either.

In 1963, the year before the transfer to Charles, Clifford gave part of his forty-acre parcel to his daughter and son-in-law, Peggy and William Erickson. (Apparently, Clifford had previously acquired Bill's interest in the parcel.) The Ericksons built a house on the property and used the road as access to their house. Charles testified that when the Ericksons moved onto their property William asked Charles if they could use the road. William testified that no such conversation took place.

There is currently a house and an old outbuilding on Charles' property. Between the time that Clarence died and Charles bought the property, various members of Clarence and Edna's family lived at the house. Charles lived at the house intermittently until about 1974. Since then, he has rented the house.

In 1982, the Ericksons barricaded the road. William testified that he barricaded the road because the renters on Charles' property were having all night parties and racing up and down the road. The barricade was up for two days.

Charles testified that there is not an alternative access to his property. There is evidence, however, that a public road, undeveloped but passable, is platted through an undeveloped area called River Ridge Home Sites which abuts Charles' east boundary line. The public road intersects perpendicularly with Charles' property. There is a fence between Charles' property and the end of the public road. During the two days when the barricade was up, the renters removed the fence and used the public road. After the barricade was removed, the fence was put back up. Compared to the public road, the road across the Ericksons' property is a shorter route to Charles' property.

Clifford testified at trial that at the time the road was built he gave Clarence permission to use the road and he continued to give Charles the same permission. Clifford

also testified that he gave Clarence "an easement" to use the road and he did not think he had the right to close the road.

After a short trial, the trial court entered judgment against Charles. The trial court found that Clarence and Edna, and their successor-in-interest, Charles, used the road with the permission of Clifford. The trial court further concluded that Charles had failed to show by clear and convincing evidence actual, open, visible, continuous and hostile use of the road for the statutory period of fifteen years. The trial court concluded that Charles was not entitled to a prescriptive easement across the Ericksons' property.

## ISSUE

Did the trial court err in determining that Charles Pickar did not have a prescriptive easement across the Ericksons' property?

## ANALYSIS

The record indicates that Charles did not make a motion for a new trial and that this appeal is from the judgment entered pursuant to the trial court's findings and conclusions. When there has been no motion for a new trial, the scope of review is limited to determining whether the evidence sustains the findings of fact and whether such findings sustain the conclusions of law and judgment. *Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976). Matters involving trial procedure and evidentiary rulings are not subject to review when there has not been a motion for a new trial. *See* 3 E. Magnuson, D. Herr & R. Haydock, Minnesota Practice § 103.16, at 48 (1985).

To establish an easement by prescription, a party must prove by clear and convincing

evidence that the use was hostile or adverse, actual, open, continuous and exclusive for the statutory fifteen-year period. *Ehle v. Prosser*, 293 Minn. 183, 189, 197 N.W.2d 458, 462 (1972); Minn.Stat. § 541.-02 (1984). The issue in this case is whether Charles' use was "hostile" or "adverse."[1]

There is at least an inference, if not a presumption, that a use is permissive where the owners of the two estates have a close family relationship. *Wojahn v. Johnson*, 297 N.W.2d 298, 306 (Minn.1980) (quoting *Norgong v. Whitehead*, 225 Minn. 379, 383, 31 N.W.2d 267, 269 (1948)). This inference of a permissive use applies in this case where one brother bought property adjoining his two brothers' property.[2] *See, e.g., Lustmann v. Lustmann*, 204 Minn. 228, 283 N.W. 387 (1939) (inference applied when two brothers built a cartway together).

In addition to the applicable inference, there was evidence that the use of the road was permissive. Clifford testified that Clarence and Edna used the road with his permission. While Clifford's testimony about the use of the road was somewhat conflicting, it is for the trial court to resolve conflicts in testimony and evaluate the credibility of witnesses. *See, e.g., Wojahn*, 297 N.W.2d at 303; *Bjerketvedt v. Jacobson*, 232 Minn. 152, 157, 44 N.W.2d 775, 778 (1950). The evidence sufficiently supports the trial court's finding of a permissive use.

Charles relies on the contract for deed describing an easement across Clifford's property to challenge the trial court's finding of a permissive use. It appears from the record that the trial court admitted the contract for deed into evidence for the limited purpose of proving the date on which the property was pur-

1. Charles argues that the trial court erred in finding that he did not have a claim of right. "A claim of right" is often used synonomously with a "hostile" or "adverse" use. *Barnes v. Milligan*, 200 Neb. 450, 454, 264 N.W.2d 186, 189 (1978). *See also Carpenter v. Coles*, 75 Minn. 9, 11, 77 N.W. 424, 424 (1898). Thus, Charles is really arguing that the trial court erred in not finding a hostile or adverse use.

2. We decline to adopt Charles' position that this inference does not arise where the original use was under a color of title. None of the cases applying the inference make a distinction based on the presence or absence of a claim or color of title. Further, under general principles of adverse possession, the presence or absence of a color or claim of title is not a material issue. *See Carpenter*, 75 Minn. at 11, 77 N.W. at 424 (1898).

chased. The trial court determined that the evidence indicating that the brothers may have mistakenly believed an easement existed (based on the original contract for deed) did not rise to the level of clear and convincing proof of a hostile or adverse use. We do not believe the trial court's determination is clearly erroneous.[3]

■ In such a case as this, the use is presumed to continue as permissive, rather than hostile, until the contrary is affirmatively shown. *Wojahn,* 297 N.W.2d at 306 (quoting *Norgong,* 225 Minn. at 383, 31 N.W.2d at 269). With respect to whether Charles showed that the permissive use was discontinued, the trial court stated:

> [T]he earliest date at which [Charles] could show use under a claim of right against [the Ericksons] and their predecessors in title was 1971—the time at which the Ericksons acquired the land from [Clifford]. That date is * * * only eleven years from the commencement of this action. That being so, it cannot be concluded, as a matter of fact, that there has been adverse use for the statutory period.

The trial court did not specifically determine whether Charles met his burden of proving a change in the permissive use, because it determined that any hostile use that may have existed did not satisfy the fifteen-year statutory requirement.

■ The trial court's conclusion here is based on the erroneous finding that the date of the property transfer to the Ericksons was 1971. The undisputed evidence indicates that the Ericksons acquired the property in 1963, not 1971.

■ In light of this fact, we must remand to the trial court for a determination of whether Charles met his burden of proving a change in the permissive use. We note as guidance to the trial court that a transfer in ownership does not alone constitute an affirmative showing that the permissive use changed to a hostile one. *See Lechner v. Adelman,* 369 N.W.2d 331 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. Aug. 29, 1985).

## DECISION

Because respondents acquired the property in 1963, the trial court must determine whether appellant met his burden of proving a change in the permissive use.

Remanded for proceedings consistent with this opinion.

---

3. The trial court did not directly address the legal significance of the contract for deed. We note that the contract for deed has questionable legal effect, because absent a mistake or fraud, a contract for deed presumptively merges into a subsequent deed which is executed in performance of the contract for deed. *McCarthy's St. Louis Park Cafe v. Minneapolis Baseball & Athletic Association,* 258 Minn. 447, 454, 104 N.W.2d 895, 901 (1960). *See also Tamm, Inc. v.*

*Pildis,* 249 N.W.2d 823, 836–37 (Iowa 1976) (a real estate contract with a description of an easement merged into a warranty deed that had no mention of easement and the warranty deed was controlling). There is no evidence in the record that addresses whether the easement was mistakenly excluded from the legal description in Clarence and Edna's warranty deed and there are no allegations of fraud.