Lynn L. ROGERS, et al., petitioners, Appellants,

v.

**John MOORE, et al., Respondents.**

No. C0–98–1345.

Supreme Court of Minnesota.

Dec. 30, 1999.

Scott C. Baumgartner, John J. Berglund & Varco, Ltd., Anoka, for appellants.

Kathryn J. Bergstrom, Kenneth A. Prine, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, for respondents.

## OPINION

PAUL H. ANDERSON, Justice.

The parties in this case are embroiled in a dispute over the status of a driveway located on parts of two adjoining residen-

tial lots in North Minneapolis. Lynn and Donna Rogers assert that they have demonstrated the continuous use of a driveway over part of John and Lisa Moore's property for the 15–year period required to establish a prescriptive easement. The Moores claim that the Rogers have failed to prove the existence of the easement. The district court found that the Rogers established an easement, but the Minnesota Court of Appeals reversed on the grounds that the record did not support a finding of continuous use. We reverse the court of appeals on the grounds that the district court's finding of continuous use was not clearly erroneous.

The facts relevant to this case span nearly 30 years, beginning on November 21, 1969, when appellant Lynn Rogers and his former wife, Susanne Rogers, purchased a parcel of real estate (hereinafter referred to as the Rogers' property) legally described as:

South one-half of Lot 9, Block 9, Bottineau's Second Addition to the Town of St. Anthony, County of Hennepin, State of Minnesota.

This lot is commonly known as: 1907–1909 Third Street Northeast, Minneapolis, MN. At the time of purchase, the Rogers' property consisted of an improved residential lot with a duplex and a detached garage. From 1969 until 1976, Lynn and Susanne Rogers resided in the upper level of the duplex together and leased the lower level to various tenants. In 1976, Lynn Rogers and Susanne Rogers divorced and Lynn Rogers retained possession of the duplex. In 1979, Lynn Rogers married appellant Donna Rogers. From 1979 until 1983, Lynn and Donna Rogers (the Rogers) maintained two residences: the upper level of the Minneapolis duplex and a separate residence in Ely, Minnesota. Between 1979 and 1983, they continued to lease the lower level of the Minneapolis duplex.

Throughout this entire time, from the date of purchase until 1983, the Rogers and their tenants used a driveway that ran from a curb cut on Third Street east along the north property line of their property. This driveway was the only access to the garage and a gravel parking area behind the Rogers' duplex. In 1978 during routine sidewalk maintenance, the city of Minneapolis widened the Third Street curb cut to more closely correspond to the width of the driveway. At that time, the driveway was approximately 10 feet wide. Unknown to anyone during this time, the driveway encroached on the property immediately to the north of the Rogers' property.

In December 1983, the Rogers sold their property by contract for deed to D & S Properties, a Minnesota Partnership (D & S). D & S purchased the Rogers' property as an investment, intending to lease both units, and from 1983 until 1990 or early 1991, D & S leased both units to various residential tenants. At some point between 1983 and 1994, the detached garage was demolished and removed. D & S neglected to maintain the property and, by late 1990 or early 1991, had allowed the property to become so run down that there were no tenants remaining in the duplex. D & S stopped making payments on the contract for deed in late 1990 or early 1991. The Rogers cancelled the contract for nonpayment in 1991. It is uncontested that during the life of the D & S contract for deed, Lynn Rogers made approximately 12 visits to the property to check on its condition in case he "ended up getting it back." He testified that on each visit he noticed cars parked in the gravel parking area behind the duplex and that the driveway showed signs of use. After the Rogers repossessed their property, they placed it on the market for sale.

In October 1991, Joseph Sheehan purchased the Rogers' property by contract for deed. Sheehan intended to renovate the duplex and then lease both units. While Sheehan was renovating the duplex, he also excavated, refilled, and defined the driveway without changing its dimensions. Due to business difficulties, Sheehan soon was unable to make payments on the con-

tract for deed or to pay real estate taxes on the property. In August 1994, the Rogers' property was forfeited for unpaid real estate taxes. The Rogers redeemed the property from the state, cancelled the contract for deed, and repossessed the property early in 1995. The Rogers then repaired the damage to the duplex caused during its vacancy and new tenants moved in during July 1996.

From as early as 1969 until early in 1994, the property immediately to the north of the Rogers' property contained an older single-family house, which was set back approximately 3 feet from the south property line. The south wall of this house generally defined the northern boundary of the Rogers' driveway. In the spring of 1994, the Greater Minneapolis Metropolitan Housing Corporation replaced this house with a new larger single-family house set back approximately 11 feet from the south property line. However, the driveway remained at its previous location. Respondents John and Lisa Moore (the Moores), then living a few blocks away, observed the construction of the new house and noticed that the property was for sale.

On April 25, 1994, the Moores entered into a purchase agreement for the parcel of real estate immediately north of the Rogers' property (hereinafter referred to as the Moores' property) legally described as:

> South one-half of Lot 8 and the North half of Lot 9, Block 9, Bottineau's Second Addition to the Town of St. Anthony, County of Hennepin, State of Minnesota.[1]

This lot is commonly known as: 1911 Third Street Northeast, Minneapolis, MN. The Moores' property consists of an improved residential lot with a single-family house and a detached garage. Prior to signing the purchase agreement, the Moores inspected the property and noticed both the curb cut on Third Street and the gravel driveway extending along the property line between their property and the Rogers' property. The Moores moved in a month later, by May 28, 1994, and closed on the property on June 25, 1994.

Two boundary surveys of the Moores' property were completed before the Moores purchased their property and were reviewed by the Moores prior to closing. The first survey, dated January 14, 1993, showed the property with the older house. It also indicated the curb cut and gravel driveway encroaching on the Moores' property from the south. The survey showed the set-back from the south property line to the older house as 3.2 feet at the southwest corner and 3.05 feet at the southeast corner. This difference was attributed to the positioning of the house on the property. The survey also showed the distance from the Rogers' duplex to the south property line of the Moores' property as 7.1 feet at its narrowest point. According to this survey, the gravel driveway occupied virtually all of the space between these structures, a width of approximately 10 feet. The survey did not indicate the entire path of the driveway or its length along the Moores' south property line. But the survey appears to indicate that the driveway curved into the Rogers' property at a point just east of the older house's southeast corner, allowing vehicle access to the gravel parking area behind the duplex. The survey indicates that the encroachment did not extend the length of the Moores' property, but ceased at some point east of the older house's southeast corner.

A second survey dated in April 1993 showed a new house overlaid on the January 14, 1993 survey. This new house was to be set back approximately 11 feet from

---

1. The record is silent on whether these properties are abstract or Torrens property. We take notice that both properties are listed as abstract properties with the Hennepin County Recorder. Accordingly, the Registered Property Act is not implicated in this matter. *See generally* Minn.Stat. § 508.02 (1998) (stating that no title by adverse possession or easement by prescription may be acquired against registered (Torrens) property).

the Moores' south property line. The survey continued to show the Rogers' driveway as described in the first survey. As previously noted, the Moores reviewed these surveys prior to closing; however, they stated that they were not concerned about the driveway's encroachment because "on the deed there wasn't any written easement."

In June 1994, prior to closing on the property, the Moores were approached by Sheehan who at that time remained in possession of the Rogers' property. Sheehan was concerned because sod had been laid approximately 3 feet into the driveway by the Greater Minneapolis Metropolitan Housing Corporation. Sheehan requested that the Moores remove the sod. The Moores and Sheehan disagreed about the exact placement of the Moores' property line and John Moore showed Sheehan the above-described surveys. After noting the driveway's encroachment on the Moores' property, Sheehan raised the possibility of purchasing the easement. The Moores refused, stating that they had purchased the entire property as described in the surveys and their purchase included that part of the driveway encroaching on their property. Shortly after this encounter, the Rogers' property was forfeited for unpaid real estate taxes and Sheehan lost possession.

About one year later in April or May 1995, the Moores erected a fence along part of the south boundary of their property. The fence extended from near the midpoint of the south wall of the new house, south to the property line, then east along the property line to the property's southeast corner. This fence intruded on the driveway approximately 3 feet and effectively blocked the driveway as an access to the gravel parking area behind the Rogers' duplex.

After the Rogers repossessed their property, the Moores noticed workmen, hired by the Rogers, continuing to use the unobstructed part of the driveway. One day in June 1995, the Moores also noticed Lynn Rogers using the driveway. On that occasion, Lynn Rogers and John Moore discussed the driveway and the fence. John Moore told Lynn Rogers that he could not use the driveway any longer. The Moores also stated that they were not interested in selling an easement for the driveway and that if the Rogers continued to use the driveway, the Moores would block the remainder of the driveway. On August 3, 1995, the Moores effectively blocked the driveway as a vehicle access by placing a 3-inch metal pole approximately 3 feet into the driveway at the southwest corner of their property.

After private attempts to resolve this dispute failed, the Rogers brought a declaratory judgment action for a prescriptive easement. In their complaint, the Rogers described the requested easement as the south 10 feet of the Moores' property. The matter was tried before a Hennepin County District Court judge without a jury. During the trial, photographs of the adjoining lots were admitted, as well as the two surveys that were admitted both through John Moore's testimony and that of the surveyor. The dispositive issue at trial was whether the Rogers had established continuous use of the driveway for the entire 15 years required for a prescriptive easement.

At the close of evidence and after the parties submitted written closing arguments, the district court adopted the proposed findings of fact, conclusions of law and order submitted before trial by the Rogers. The court did not draft a new document, but merely struck the word "proposed" and signed the document submitted by the Rogers. However, the Rogers' proposed findings transposed the legal descriptions of the lots and thus the district court's decision to adopt the Rogers' proposed findings without modification perpetuated this error.

The district court found that the Rogers demonstrated the continuous use of the driveway for the 15-year period required to establish a prescriptive easement. The

court's finding that was critical to this dispositive issue stated:

> In December of 1983, Plaintiffs [Rogers] sold the property to D & S Properties under contract for deed * * *. While under D & S Properties' ownership, the property was rented to other tenants who also used the driveway as access to the backyard for parking.

Based on the above finding, the court concluded that, as a result of the Rogers' "adverse, open, continuous and exclusive use of the southern ten feet" of the Moores' property for 15 years, the Rogers had obtained a prescriptive easement. The court then ordered that

> Plaintiff's Motion requesting this Court to declare that Plaintiffs have obtained an adverse possessory right to use that portion of Defendants' property upon which Plaintiffs [sic] driveway lies, described as the *South ten feet* of the Defendants' property is hereby granted.

(Emphasis added.) The order also contained a sentence stating that the Rogers were entitled to their reasonable attorney fees, costs, and disbursements incurred in this matter. Because the legal descriptions of the lots were transposed, the court erroneously granted a 10–foot wide easement in favor of the Rogers along the south line of the property actually owned by the Rogers. Thus, the easement granted by the court has no correlation to the actual driveway used by the Rogers.

The Moores filed a motion for amended findings requesting that the original findings be changed to reflect an encroachment of between 3.05 and 3.2 feet. The Moores also argued that most of the substantive factual findings and legal conclusions by the district court were erroneous. However, no mention was made that the legal descriptions of the lots were transposed. Nor did the Moores raise the lack of evidence showing that the easement ran the entire length of their property. After considering the Moores' motion, the district court amended its findings to reflect an encroachment of 3.2 feet. The court denied the remainder of the motion as an impermissible motion for reconsideration and then awarded the Rogers $1,000 in attorney fees for defending the motion.

The Moores filed a notice of appeal challenging the declaration of the easement and the award of attorney fees. The court of appeals rejected the appeal as not ripe for adjudication because the district court had not yet entered the amount of attorney fees reasonably incurred at trial. In a second amended order, the district court awarded the Rogers $5,000 for attorney fees. The Moores appealed again, but the second order also was incomplete, lacking the phrase "let judgment be entered accordingly." The district court then issued a third amended order correcting this error, after which the court of appeals accepted review.

The Moores argued on appeal that the Rogers' claim must fail because no evidence was introduced at trial of the requisite use of the driveway during the fifteenth year—December 1983 to November 1984. In response, the Rogers argued that they had introduced sufficient evidence to support the district court's finding of continuous use of the driveway from 1969 until the Moores blocked the driveway in 1995. After first stating that a prescriptive easement must be proved by clear and convincing evidence, the court of appeals reversed the district court. *See Rogers v. Moore*, No. C0–98–1345, 1999 WL 31172, at *2 (Minn.App. Jan.26, 1999). The court held that the district court's finding of continuous use by the Rogers from December 1983 to November 1984 was based on evidence "too vague and indefinite" to support the award of a prescriptive easement. *Id.* at *2. The court of appeals also reversed the award of attorney fees as not being supported by any findings of bad faith or frivolous conduct. *See id.*

The Rogers petitioned this court for further review. The only issue raised in their petition was the court of appeals' reversal

of the judgment establishing the prescriptive easement. In their brief, the Rogers also argued that this court should reverse the court of appeals on the issue of attorney fees. Contending that the Rogers' argument exceeded the scope of review, the Moores moved to strike that section of the Rogers' brief dealing with attorney fees. We granted the Moores' motion; thus, the only remaining issue before this court concerns the status of the prescriptive easement.

■ At this point, we note that one aspect of this case warrants preliminary comment. Such comment is necessary because certain inaccuracies and errors remain uncorrected in the record before us. Most notable is the transposition of the legal descriptions of the two lots. We note, however, that the errors, while significant, are primarily clerical in nature and therefore may be corrected by the district court *nunc pro tunc. See* Minn. R. Civ. P. 60.01 (allowing the district court to correct clerical errors, or errors from oversight or omission, on motion of the parties or on its own initiative). Because the errors we have noted do not directly affect our review of the issue of whether the Rogers proved continuous use sufficient to establish the prescriptive easement, we will proceed with our analysis of that issue.

The dispositive issue in this matter directly involves a finding of fact by the district court during a bench trial. Accordingly, Minn. R. Civ. P. 52.01 determines the scope of our review and states in relevant part:

> In all actions tried upon the facts without a jury[,] * * * [f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

*Id.*

■ In applying this rule, we view the record in the light most favorable to the judgment of the district court. *See Northwest Tractor & Equip. Co. v. Wadsworth,* 229 Minn. 213, 215, 38 N.W.2d 841, 843 (1949). The decision of a district court should not be reversed merely because the appellate court views the evidence differently. *See Tonka Tours, Inc. v. Chadima,* 372 N.W.2d 723, 726 (Minn.1985). Rather, the findings must be "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Northern States Power Co. v. Lyon Food Products, Inc.,* 304 Minn. 196, 201, 229 N.W.2d 521, 524 (1975). As we noted recently, "[f]indings of fact are clearly erroneous only if the reviewing court is 'left with the definite and firm conviction that a mistake has been made.'" *Fletcher v. St. Paul Pioneer Press,* 589 N.W.2d 96, 101 (Minn.1999) (quoting *Gjovik v. Strope,* 401 N.W.2d 664, 667 (Minn.1987)). If there is reasonable evidence to support the district court's findings, we will not disturb them. *See id.* In conducting this review, we must look to what evidence was presented in the record to support the grant of a prescriptive easement. *See, e.g., Hartman v. Blanding's Inc.,* 288 Minn. 415, 422–23, 181 N.W.2d 466, 470 (1970) (reviewing trial record to determine whether evidence supported jury verdict awarding prescriptive easement).

■ A prescriptive easement is based on prior continuous use and grants a right to use the property of another. *See Romans v. Nadler,* 217 Minn. 174, 181, 14 N.W.2d 482, 486–87 (1944). As such, a prescriptive easement is a "servitude imposed upon corporeal property." *Id.* A prescriptive easement grants only a right of use and does not carry with it title or a right of possession in the land itself. *See id.; see also Lustmann v. Lustmann,* 204 Minn. 228, 231, 283 N.W. 387, 388 (1939). The purpose of prescriptive easements has been to encourage the prompt resolution of disputes before evidence is destroyed or relevant events pass out of memory and thereby stabilize long-continued property uses. *See* 3 Richard R. Powell, *The Law*

*of Real Property* 413, at 34–103 to 34–105 (1989).

 We have held the elements of proof required to establish a prescriptive easement are the same as those necessary to establish adverse possession. *See Romans,* 217 Minn. at 179, 14 N.W.2d at 485. The elements necessary to prove adverse possession are well established and require a showing that the property has been used in an actual, open, continuous, exclusive, and hostile manner for 15 years. *See Ehle v. Prosser,* 293 Minn. 183, 189, 197 N.W.2d 458, 462 (1972). In adopting the elements of adverse possession for prescriptive easements, we stated that they are "[s]ubject [ ] to such differences as are necessarily inherent in the application of the rules in such cases." *Romans,* 217 Minn. at 179, 14 N.W.2d at 485. In *Romans,* we stated that these inherent differences will necessarily revolve around the fundamental difference between possessing land in the case of adverse possession and using land in the case of a prescriptive easement. *See generally id.* We also noted that continuity of use will vary depending on the type of use, and accordingly the court should not view continuity of use in the context of a prescriptive easement as strictly as in the context of adverse possession. *See id.*

The elements necessary to establish adverse possession must be proved by clear and convincing evidence. *See Ehle,* 293 Minn. at 189, 197 N.W.2d at 462. We have extended the rules of adverse user for adverse possession to apply for prescriptive easements as well. *See generally Alstad v. Boyer,* 228 Minn. 307, 37 N.W.2d 372 (1949). While we have never explicitly stated that the elements of a prescriptive easement must be established by clear and convincing evidence, that they must be so proved was implicit in our adoption of the rules of adverse user for prescriptive easements.

Citing our language in *Village of Newport v. Taylor,* the Moores argue that we should apply a higher standard of proof for prescriptive easements. 225 Minn. 299, 303, 30 N.W.2d 588, 591 (1948) (stating that adverse possession must be established by "clear and positive proof based on a strict construction of the evidence"). The Moores' argument lacks merit. We first note that our holding in *Newport* dealt with a claim for adverse possession. *See id.* Further, approximately one year after *Newport,* we stated in *Alstad* that the rule in *Newport* cited by the Moores was limited to the facts of *Newport* and not generally applicable. *See Alstad,* 228 Minn. at 311, 37 N.W.2d at 375. The Moores' argument also ignores our more recent decisions which describe the level of proof for adverse possession as clear and convincing evidence. *See, e.g., Ehle,* 293 Minn. at 189, 197 N.W.2d at 462; *Gandy Co. v. Freuer,* 313 N.W.2d 576, 578 (Minn. 1981).

 Our decisions in *Romans, Alstad,* and their progeny establish that the element of continuous use for a prescriptive easement must be established by clear and convincing evidence consonant with the type of use asserted. The Rogers correctly stated this clear and convincing standard as the level of proof at trial and the district court appears to have applied that level of proof. Unfortunately, the court of appeals, while articulating the clear and convincing standard, appears to have been influenced in its review by the Moores' "strict construction" argument. As we have recently stated, the burden of clear and convincing evidence is less than that required by the "beyond a reasonable doubt" standard in criminal matters and is met when the truth of the fact to be proven is "highly probable." *See State v. Profit,* 591 N.W.2d 451, 464 (Minn.1999). In making such an evaluation, circumstantial evidence is entitled to as much weight as any other evidence. *Cf. Quast v. Prudential Property & Cas. Co.,* 267 N.W.2d 493, 495 (Minn.1978) (holding circumstantial evidence sufficient to sustain verdict for insurer's arson defense). As stated earlier, if there is reasonable evidence to support the district court's findings of fact, we will

not disturb those findings. *See Fletcher,* 589 N.W.2d at 101.

■ The court of appeals appears to agree with the Moores' argument that the Rogers failed to adduce any evidence of continuous use from December 1983 until November 1984. But rather than finding a complete absence of proof, the court of appeals held that the evidence of use during the period in question was "too vague and indefinite to prove continuous use." *Rogers,* 1999 WL 31172, at *2. On appellate review, we do not weigh the evidence. Rather, we look to the record for evidence that could reasonably support the findings of the district court. Therefore, we now look to the record to determine if there is any reasonable evidence to support the district court finding that the Rogers established their continuous use of the driveway by clear and convincing evidence.

■ The Moores argue that there was no direct evidence offered that anyone actually drove a car on the driveway during the period in question. This is too limited a view of actual and open use in the context of a prescriptive easement. We have stated in earlier decisions that the establishment and maintenance of a driveway over another's property may be evidence of actual and open use sufficient to support a prescriptive easement. *See, e.g., Alstad,* 228 Minn. at 309, 37 N.W.2d at 374 (noting evidence of construction and use of driveway); *Moore v. Henricksen,* 282 Minn. 509, 517, 165 N.W.2d 209, 216 (1968) (holding establishment of a driveway over another's property to be sufficient evidence of use to support a claim for prescriptive easement). In this case, the Rogers and their tenants possessed and used an improved gravel driveway for 14 years prior to the sale to D & S. After the sale, Lynn Rogers testified that he made some 12 visits to the property during D & S' possession from December 1983 to 1990 or 1991, though he could not recall the specific dates. During a significant part of D & S' possession of the property, at least on each occasion when Lynn Rogers visited, tenants were using the gravel parking area behind the duplex for parking and the driveway showed signs of use. After the sale of the Rogers' property to Sheehan, Sheehan excavated and redefined a driveway he assumed to be part of the Rogers' property. Sheehan's assumption was based on the existence of a clearly defined and well-used gravel driveway in 1991.

It is undisputed that the driveway was in existence and in use as a vehicle access from 1969 until December 1983. Further, the evidence shows use as a vehicle access and the continued existence of the gravel driveway from December 1983 until 1990. It also shows the gravel driveway was maintained at its existing dimensions until Sheehan took possession in 1991. Viewing this evidence, as we must, in a light most favorable to the district court's finding, there is reasonable evidence in this record to support the court's conclusion that the gravel driveway continued to encroach on the Moores' property from December 1983 to November 1984. There is also evidence from which the district court could find that it was highly probable that tenants continued to use the driveway as a vehicle access during that same period of time.

We conclude that there is reasonable evidence on the record to support the district court's finding that there was clear and convincing evidence of the requisite continuous use during the period of December 1983 to November 1984. The record demonstrates due consideration of this evidence by the court. As such, we cannot state that the court's finding of continuous use sufficient to establish a prescriptive easement was clearly erroneous. Therefore, we hold that the district court did not err when it found that the Rogers established continuous use sufficient to support a claim for a prescriptive easement. We reverse the holding of the court of appeals and reinstate the judgment of the district court.

Reversed.