**Dorothy C. BOLDT, petitioner, Appellant,**

v.

**Kenneth W. ROTH, et al., Respondents.**

**No. C4–99–953.**

Supreme Court of Minnesota.

Nov. 2, 2000.

Clinton McLagan, McLagan Lerman, P.A., Mendota Heights, for appellant.

Charles E. Barnum, Crosby, for respondents.

## OPINION

PAUL H. ANDERSON, Justice.

Dorothy Boldt brought an action against Kenneth and Mary Roth in Crow Wing County District Court for a prescriptive easement to use part of the circular driveway that had provided access to her home for over 20 years. The court denied Boldt's prescriptive easement claim, concluding that she had not proved that her use of the driveway on the Roths' property was hostile. The court found that due to the familial relationship between Boldt and the original owner of the Roths' property, Boldt's use of the Roths' property for her driveway was permissive. Boldt appealed and the Minnesota Court of Appeals affirmed. We reverse.

The parties stipulated to the facts, so they are not in dispute. Appellant Dorothy Boldt and respondents Kenneth and Mary Roth own adjacent parcels of land on

Roy Lake in Crow Wing County, Minnesota. Dorothy Boldt originally held title to her parcel as a joint tenant with her husband, James, but became the parcel's sole owner after her husband's death in 1985. Before June 24, 1966, the land comprising the two adjacent parcels was owned by Dorothy Boldt's mother-in-law, May Boldt. The legal description of the original parcel was

> [t]he West 205 feet of the East 305 feet of that part of Government Lot 5, Section 10, Township 135, Range 29, which lies South of the new township road.

On June 24, 1966, May Boldt conveyed a part of her land to Dorothy and James Boldt. The part conveyed is described as

> [t]he West 100 feet of the East 200 feet of that part of Government Lot Five (5), Section Ten (10), Township One Hundred Thirty-five (135), Range Twenty-nine (29), which lies south of the new township road now established and traveled over and across said Lot 5, subject to mineral reservations of record.
>
> Grantor, for herself, her heirs and assigns, reserves the right to use the existing roadway over the premises herein conveyed for the use of the property described as the West 105 feet of the East 305 feet of said Government Lot 5, said reservations to run with the land.

(Dorothy Boldt property.) At the time of the conveyance, access to May Boldt's home was by a gravel roadway which was located in part on the Dorothy Boldt property. In her deed of conveyance to Dorothy and James Boldt, May Boldt reserved the right to use this roadway.

After the 1966 conveyance, a house was constructed on the Dorothy Boldt property. Access to the house was along May Boldt's original roadway and part of a circular driveway. In 1968, Dorothy and James Boldt constructed a garage on the Dorothy Boldt property and regraveled the original roadway and the already-constructed part of the circular driveway. In 1976, the other part of the circular driveway was constructed and the original road-way and the entire circular driveway were paved. Part of the circular driveway used by Dorothy and James Boldt was located on May Boldt's property. Dorothy Boldt did not receive May Boldt's express permission to construct or pave the circular driveway.

On August 17, 1979, May Boldt conveyed the remainder of her property, including the roadway easement, to Wayne and Kathryn Vold. The description of the property conveyed to the Volds is

> West 105' of the East 305' of that part of Government Lot 5, Section 10, Township 135, Range 29, which lies south of the new Township road now established and traveled over and across said Lot 5, subject to mineral reservations of record, together with the right to use the existing roadway over the following described premises: The West 100 feet of the East 200 feet of that part of Government Lot 5, Section 10, Township 135, Range 29, which lies south of the new Township road now established and traveled over and across said Lot 5.

In October 1982, the Volds conveyed this property to Leonard and Gwen Thompson. In July 1990, the Thompsons conveyed this property to the Roths. This parcel is hereinafter referred to as the Roth property.

Before 1997, there were no boundary disputes between the owners of the Roth and Dorothy Boldt properties. In the summer of 1997, Dorothy Boldt began placing rock on her lakeshore. At that time, the parties questioned where the boundary line was located. Boldt then had her property surveyed. The surveyor determined that the actual boundary line between her property and the Roth property was not the assumed one. As a result of the survey, Boldt gained lakeshore frontage, but discovered that most of the circular driveway and a part of her rock garden were located on the Roth property.

Based on the survey, Dorothy Boldt did some landscaping on her newly determined

lakeshore property. As part of this landscaping, she removed some trees contrary to the wishes of the Roths. After the removal of the trees, the Roths began constructing a fence along the boundary line established by the survey. The Roths placed fence posts on the new boundary line which ran through Boldt's driveway and rock garden.

Following the placement of the fence posts, Dorothy Boldt commenced this action to gain a prescriptive easement for the use of that part of the circular driveway located on the Roth property. After mediation failed, the matter was tried on the stipulated facts. The district court found that due to the familial relationship between May and Dorothy Boldt, Dorothy Boldt's original use of the part of the driveway located on the Roth property was permissive and that Dorothy Boldt had done nothing to prove the use ever became hostile. Therefore, the court found that Dorothy Boldt had not met one of the necessary elements of a prescriptive easement claim. The court of appeals affirmed the district court, holding that Boldt's use could not be hostile because the original use was permissive and the Roths never received notice of her adverse use and therefore could not acquiesce to it.

■ On appeal, Dorothy Boldt argues that even assuming that her original use of the circular driveway was permissive, her mother-in-law's 1979 transfer of the Roth property to nonfamily members—the Volds—commenced a hostile use. Boldt further argues that because of this 1979 transfer, no notice is required to the Roths of her adverse use of that part of the circular driveway located on their property.

■ When there are no factual disputes, we must examine whether the lower courts erred in applying the law. *See Hermeling v. Minnesota Fire & Cas. Co.,* 548 N.W.2d 270, 273 (Minn.1996). We review questions of law de novo. *See Cut Price Super Mkts. v. Kingpin Foods, Inc.,*

256 Minn. 339, 354, 98 N.W.2d 257, 268 (1959).

■ A prescriptive easement claim involves the same elements of proof as an adverse possession claim, subject to the inherent differences between such claims. *See Rogers v. Moore,* 603 N.W.2d 650, 657 (Minn.1999). The differences between the claims arise from the difference between possessing the land for adverse possession and using the land for a prescriptive easement. *See id.* A prescriptive easement claimant must prove by clear and convincing evidence that the property for which she is requesting the easement was used "in an actual, open, continuous, exclusive, and hostile manner for 15 years." *Id.* The claimant has the burden of proof, but if she proves actual, open, continuous, and exclusive use, then hostility of the use is presumed. *See Dozier v. Krmpotich,* 227 Minn. 503, 507–09, 35 N.W.2d 696, 699 (1949). Specifically, in *Dozier,* we held:

> Where the claimant of an easement by prescription has shown open, visible, continuous, and unmolested use for the statutory period, inconsistent with the rights of the owner of the servient estate * * * the use will be presumed to be under claim of right and adverse, so as to place on the owner of the servient estate the burden of rebutting the presumption by evidence that the use was permissive. .

*Id.* The effect of the presumption articulated in *Dozier* is that once a claimant to a prescriptive easement has established actual, open, continuous, and exclusive use for the required length of time, the burden of proof shifts to the owner of the servient estate to prove permission. *See id.; see also Rogers,* 603 N.W.2d at 657.

We have recognized that this general rule of presumed hostility is modified in cases in which family members own both the dominant and servient estates. *See Wojahn v. Johnson,* 297 N.W.2d 298, 306 (Minn.1980). The reason for this modification is that the nature of close familial relationships is such that mere actual,

open, exclusive, and continuous possession is not enough to give notice to a family member that a use is hostile. *See Beitz v. Buendiger*, 144 Minn. 52, 54, 174 N.W. 440, 441 (1919) (explaining the impact of a close familial relationship in an adverse possession case). In these situations, the presence of the close familial relationship gives rise to "the inference, if not the presumption" that the use is permissive. *See Wojahn*, 297 N.W.2d at 306. Here, when applying an inference, if not a presumption, of permissive use, the court of appeals shifted the burden to Boldt to prove that her use was hostile. *See Boldt v. Roth*, 604 N.W.2d 117, 119–20 (Minn.App. 2000). Thus, the court of appeals applied a presumption that the familial use was permissive.

It is undisputed that Dorothy Boldt's use of the circular driveway continued for more than 15 years after her mother-in-law conveyed the remaining parcel to a stranger—the Volds. If a transfer of the servient estate to a stranger eliminates the "inference, if not the presumption" that the use is permissive when there is a close family relationship, our holding does not depend on an analysis of the impact of a close family relationship. Therefore, if we conclude that Boldt's use became hostile at the date of the 1979 transfer to the Volds, there will be no need to address whether the court of appeals correctly applied the rule of "inference, if not the presumption" of permissive use between family members. Thus, we begin our analysis at the point in time when the Roth property was transferred to a nonfamily member.

The Roths, as owners of the property to which Dorothy Boldt is seeking a prescriptive easement, are the owners of the servient estate. Because Boldt is seeking the benefit of an easement over the Roth property, she is the claimant of the dominant estate. Assuming that Boldt's use of the circular driveway was initially permissive, she maintains that her use became hostile when her mother-in-law transferred the servient estate to a nonfamily member.

But the Roths argue that we have previously stated that once a use is established as permissive, it can become adverse only if there is a "notorious assertion of right." *Lustmann v. Lustmann*, 204 Minn. 228, 231, 283 N.W. 387, 389 (1939) (quoting *Collins v. Colleran*, 86 Minn. 199, 205, 90 N.W. 364, 366 (1902)). The Roths maintain that the mere transfer of property is not enough to qualify as such a notorious assertion. They assert that, without more, Boldt's use of the driveway continued to be permissive until the date of the survey. The Roths cite a court of appeals case, *Pickar v. Erickson*, 382 N.W.2d 536 (Minn. App.1986), to support this position. In *Pickar*, the court of appeals provided direction to the district court by noting that "a transfer in ownership does not alone constitute an affirmative showing that the permissive use changed to a hostile one." *Id.* at 539. However, *Pickar* is not persuasive because, in *Pickar*, both the new servient owners and the new dominant owner were still family members. *See id.* at 538–39.

In support of her position, Dorothy Boldt points to *Wojahn*, where we dealt with a situation similar to that of the parties here. *See* 297 N.W.2d at 302. In *Wojahn*, one owner held the original parcel of land. *See id.* The land was then divided and one of the two parcels was transferred to a family member. *See id.* A few years later, the remaining parcel was transferred to a nonfamily member. *See id.* After stating that there is an inference, if not a presumption, of permission due to the familial relationship, we concluded that the district court correctly ruled that the 15–year time period did not begin to run until after the original owner had transferred the remaining parcel to a nonfamily member. *See id.* at 306. The issue before the court in *Wojahn* was specifically when *could* the use become hostile once it has been found to be permissive due to the familial relationship. *See id.* at 305–06. We concluded that under the facts in *Wojahn*, when there was no other

notorious assertion of right, the use of the property could not become hostile until the family member owning the servient estate transferred the property to a stranger. *See id.* However, we never discussed why the use could become hostile when the servient estate was transferred to a non-family member. *See id.*

 As previously stated, the general rule is that when family members own adjoining parcels of real property and one is using a part of the other's property for her own benefit, such use gives rise to an inference, if not a presumption, that the use is permissive due to the familial relationship. *See id.* at 306. The reason for that designation is that the nature of a familial relationship suggests that the family member whose property is being used would not know, without some other assertion, that the use by the relative was hostile. *See Beitz,* 144 Minn. at 54, 174 N.W. at 441. However, when the owners of adjoining parcels of real property are strangers, there is no need for the permissive inference or presumption because the servient estate owner should know simply by the actual and open use by the dominant estate claimant that the use is hostile. *See* 16 Powell on Real Property § 91.04[1] (Michael Allen Wolf ed., Matthew Bender). In light of this reasoning, the assumption made by this court in *Wojahn,* that a use of the property could become hostile once family members no longer owned both properties, follows logically. Once the owner of the servient estate is no longer a family member, actual and open use should suffice to notify the owner that the use is hostile. Subsequent servient estate owners who do not have a familial relationship have no reason to presume that a use is not an assertion of a claim of right. They have notice of the boundaries to their property and that the use is actual and open. We now extend our *Wojahn* analysis to hold that, absent evidence of continued permission, the transfer of the servient estate to a stranger renders hostile a use previously considered permissive due to a close familial relationship and such transfer will commence the 15–year prescriptive easement time period.

Application of this rule to the facts here results in the conclusion that Dorothy Boldt has proved all the elements necessary to establish her prescriptive easement claim. The Roths have conceded that Boldt's use of that part of the circular driveway located on their property was actual, open, continuous, and exclusive for more than 15 years because construction of the entire driveway was completed in 1976 and Boldt's use of the western part of the circular driveway began in 1968. Regardless of whether Boldt's original use of the driveway was permissive, that use became hostile in 1979 when Boldt's mother-in-law transferred the remaining parcel to nonfamily members. The Roths and their predecessors in title never objected to Boldt's use of the circular driveway until the Roths did so after the 1997 survey. At a minimum, Boldt has been using the circular driveway in a manner that is actual, open, continuous, exclusive, and hostile for 18 years. Therefore, we hold that Boldt has established a prescriptive easement over the part of her circular driveway located on the Roth property and remand to the district court for further proceedings consistent with this opinion.

Reversed and remanded.